ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2009 MAR 10 PM 3:35

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ENCLAVE ARLINGTON ASSOCIATES LIMITED PARTNERSHIP, | § § § | |
| Plaintiff, | § § | Civil Action No.: |
| v. | § § | **4-09CV-155-A** |
| CITY OF ARLINGTON, TEXAS, | § § § | |
| Defendant. | § § | |

## PLAINTIFF ENCLAVE ARLINGTON ASSOCIATES LIMITED PARTNERSHIP'S ORIGINAL COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff Enclave Arlington Associates Limited Partnership ("Enclave") files this Original Complaint and Application for Injunctive Relief against Defendant City of Arlington, Texas (the "City") and in support would show as follows:

### I.
### PARTIES

1. Enclave is a Texas limited partnership with its principal office located in Houston, Texas. Enclave's claims exceed the minimum jurisdictional limits of this Court.

2. Defendant City of Arlington is an incorporated municipality located in Tarrant County, Texas. This Court can exercise personal jurisdiction over the City because the City is a citizen of the State of Texas and conducts business in the State of Texas, and otherwise has sufficient minimum contacts with the State of Texas to warrant the exercise of personal jurisdiction. Further, the City is subject to suit in this matter because sovereign immunity does not shield the City from a claim based on an unconstitutional taking of property. The City may

be served with process by serving Robert Cluck, Mayor of the City of Arlington, at 101 W. Abram Street, Arlington, Texas 76010.

## II.
## JURISDICTION AND VENUE

3. This is an action brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, for violations of the Due Process clause of the Fourteenth Amendment and Takings Clause of the Fifth Amendment, preliminary injunction and permanent injunction, and for private nuisance under the laws of the State of Texas.

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court also has jurisdiction, pursuant to the principles of supplemental jurisdiction, over Enclave's state law claims.

5. This Court has personal jurisdiction over the City in that it is a municipality located in the State of Texas.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the City is an entity or individual subject to personal jurisdiction in this judicial district.

## III.
## FACTUAL BACKGROUND

A. **The Apartment Complex and Randol Mill Road.**

7. Enclave owns The Enclave at Arlington apartment complex (the "Apartment Complex") located at 1249 Enclave Circle, Arlington, Texas 76011 directly across from the ongoing construction of the Dallas Cowboys' new football stadium (the "Stadium"). The Apartment Complex provides high quality, reasonably-priced apartments for middle-class and lower middle-class citizens of Arlington, Texas.

8. Residents, guests, and employees of the Apartment Complex access and leave the property via an operational gate that feeds directly onto Randol Mill Road. Randol Mill Road abuts the south side of the Apartment Complex and is the primary ingress and egress for its residents and their visitors. In addition to providing convenient access to the Apartment Complex, Randol Mill Road is also a main artery for pedestrians and motorists in the area, providing service and access to Six Flags Parks, the Ballpark at Arlington, and various other restaurants, hotels, shops and businesses in the surrounding community. Notably, Randol Mill Road also provides convenient access to local medical services, most notably Arlington Memorial Hospital, and serves as a main thoroughfare for emergency services vehicles.

9. Other than Randol Mill Road, the only other means of access to the Apartment Complex is an exit-only gate located on a small back-road on the property's north side that passes directly through a singly family residential neighborhood. This back-road is narrow and difficult for vehicles to maneuver and not generally used or available to residents or guests of the Apartment Complex. Moreover, the fact that this street passes through a residential neighborhood creates additional safety and traffic concerns.

**B.    The City Abdicates to the Cowboys Under the Stadium Deal.**

10. In December 2004, the City entered a master development agreement (the "Master Agreement") with the Dallas Cowboys Football Club Ltd. (the "Cowboys") for the ownership, design, construction and leasing of the Stadium for the Dallas Cowboys professional football team. Under the Master Agreement, the City will own the completed Stadium and surrounding property, leasing the facility to the Cowboys for a period of at least 30 years. In return, the Cowboys have responsibility for its operations and management and can require the City to take certain actions to further the project. It is the City's agreement to cede certain of its

basic municipal authority to the Cowboys in connection with the Stadium project. On information and belief, the Cowboys have substantial control over most decisions affecting the surrounding area, including traffic control plans, eminent domain targets, and parking considerations.

11. Real property needed to be acquired at the proposed Stadium site and surrounding area to permit access to, as well as design and construction of, the Stadium and its supporting facilities. Under the Master Agreement, the Cowboys are entitled to and did direct the City as to which properties to purchase or condemn. The funding for the acquisition of all such properties comes from a jointly-controlled project fund contributed to by the City and the Cowboys. Under the Master Agreement, no such property can be purchased with project funds without the consent of both the City and the Cowboys. Thus, the Cowboys possess a veto over any property that the City would otherwise propose taking.

C. **The City and Cowboys Create a Nuisance.**

12. The primary site that the Cowboys directed the City to choose for the construction of the Stadium is directly across Randol Mill Road from the Apartment Complex. Under the current design, the City, at the direction of the Cowboys, placed the service and maintenance entrances for the Stadium as well as primary access to the construction site directly across from the Apartment Complex causing substantial dirt, damage and debris to be deposited on Randol Mill Road and in the Apartment Complex itself. Despite acquiring nearby properties, the Cowboys did not direct the City to condemn, and it did not condemn, or ever offer to purchase the Apartment Complex property. On information and belief, it appears the decision to forego condemnation proceedings on the Apartment Complex is, at best, poor and negligent planning on

the part of the City and Cowboys, or, at worst, a calculated attempt to drive down the fair market value of the Apartment Complex in hopes of obtaining it at a severely reduced rate in the future.

13. Notably, the City has purchased various properties near the Apartment Complex, leaving it isolated and exposed to the dirt, damage and debris necessarily caused by placing the primary construction site access route directly across from the Apartment Complex, thus making it more difficult to access and exposing the Apartment Complex's tenants and visitors to massive dirt, damage and debris caused by the Stadium construction. Such conduct directly damages the Apartment Complex, by making it substantially less attractive to current and potential tenants, directly lowering its rental and overall value as a residential property.

### D. The City's Negligent Parking and Traffic Plans.

14. By their own calculations, the City and the Cowboys plan not only to have eight (8) home regular season football games at the Stadium, but are attempting to attract numerous other collegiate and high school football games as well as concert acts and other events that will fill the 90,000+ seat venue on over 100 days per year. Already scheduled for the Stadium are the Cotton Bowl, Super Bowl XLV, Texas A&M vs. Arkansas football game, Big 12 Football Conference Championship; and NBA All-Star Game. By its own admission, the City expects as many as *30,000* additional vehicles, with each expected to carry 3 or more passengers, in the area for special events and Cowboys games. Originally, the City had indicated that the stadium would begin hosting events in late August and early September of 2009. As of February 17, 2009, however, the Cowboys and the City have announced the inaugural event will be a musical concert scheduled for June 6, 2009, less than four months away.

15. Nonetheless, the City currently has no set plan for how to manage this massive influx of traffic and people into the area. More specifically, the City has entirely failed to make

any plans or give any consideration for how tenants, visitors and even emergency medical personnel are supposed to be able to enter and leave the Apartment Complex before, during and after events at the stadium. Instead, the City's primary solution appears to be to close down Randol Mill Road and various other roads that surround the Apartment Complex to provide private thoroughfares and direct pedestrian access to the stadium for the Cowboys' highest-paying ticketholders and VIPs.[1]

16. As part of the City's current but unfinished "plan," the City intends to close down the portion of Randol Mill Road fronting the Apartment Complex for the entirety of all game days and for the hours before during and after other Stadium events. Should the City take such action, primary access to the Apartment Complex will be denied to its tenants, as well as to all prospective tenants, managers, operators, vendors and visitors. Moreover, the City's plan could subject the residents, guests and other visitors to the Apartment Complex to unnecessary risk and danger given that emergency services vehicles, including ambulances and fire trucks, and other public utility vehicles will be effectively denied access to the property, or will be so delayed that catastrophe cannot be avoided.

17. Despite planning that prevent virtually all access to the Apartment Complex during Stadium events, cripple the intended use of the facility and effectively either lock out residents and guests or imprison them in their own apartments, the City has given no consideration to these problems. Instead, the only "plan" offered by the City is to offer the Apartment Complex's residents identification badges allowing *only* residents, and no one else, access to the property on days when Randol Mill Road is closed. As for friends and family,

---

[1] In a further and more egregious abdication of its municipal duties, under the Master Agreement, the City also agreed to take any actions necessary to enforce the Cowboys requested control of ingress and egress to the Stadium and surrounding area by closing access to selected streets as requested by the Cowboys. Again, in so doing, the City abdicated its primary municipal authority in favor of a private, for-profit entity, the Cowboys.

**PLAINTIFF ENCLAVE ARLINGTON ASSOCIATES LIMITED PARTNERSHIP'S
ORIGINAL COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF** – Page 6
DAL 77,374,058v5

someone that may have lost or misplaced their identification badge, or just a common pizza boy, they would be denied entry.

18. The massive number of anticipated events at the Stadium, combined with the City's plan to close down Randol Mill Road, the stifling amount of traffic that the City has failed to properly account for, and shortage of proper parking, will constitute a material and substantial impairment of access to the Apartment Complex. Residents, visitors, employees and necessary service providers will be forced to sit in traffic for extended periods of time just to reach Randol Mill Road, where they likely will be completely barred from accessing the Apartment Complex. Conversely, anyone living at or visiting the Apartment Complex will be a prisoner in their own home.

E. **The City Hides Its "Plan" from Enclave.**

19. Despite being obligated to do so under the Master Agreement and related agreements, the City, up until recently and only months before hosting its first event at the Stadium, has never invited Enclave to attend planning or other public meetings or notified it of its plans in connection with the design and construction of the Stadium or the condemnation of surrounding properties. Thus, it has been virtually impossible for Enclave to predict the impact of the facility on its operations as a multi-family dwelling.

20. Enclave made numerous demands on the City to confirm what plans, if any, the City intended to implement to accommodate the residents of the Apartment Complex. The City largely ignored these requests. Enclave also requested documents and traffic control plans from the City under the Public Information Act. As of this lawsuit, the City still has not provided the documents Enclave requested in its demands to and meetings with the City. The pendency of the

Stadium's opening and the first special events at the venue, combined with the City's lack of any valid plan for access to and from the Apartment Complex, necessitates the filing of this lawsuit.

21. The City's conduct amounts to no less than a complete taking of the Apartment Complex. The anticipated stifling traffic in the area occasioned by the construction of the Stadium and failure by the City to enact a workable traffic and access plan, combined with the proposed road closures, and continuous noise, debris, dirt and other nuisances caused by the Stadium, severely damage the Apartment Complex as a multi-family property by lowering the rental and resale values of the property, making it more difficult for the property to obtain credit refinancing, and lowering revenues at the property through decreased numbers of tenants and rental rates. Moreover, the increased traffic and denial of access implement substantial public safety concerns in that motorists will be forced to drive through residential neighborhoods where kids play and reside and emergency services vehicles will be severely hindered in their ability to provide life-saving relief to residents and guests of the Apartment Complex.

22. Finally, the City's plans dramatically increases the potential liability and risk for Enclave caused by unwanted intruders on the property, such as late night concert and other fans looking to extend their festivities. The massively increased flow of pedestrians and motorists before, during and especially after special events and games at the Stadium increases the likelihood of trespassers, and in turn, increases the likelihood that these trespassers could cause damage to the Apartment Complex, commit criminal and civil offenses on its grounds, or injure themselves while seeking improper access to the property. Rather than completely isolate the Apartment Complex and expose Enclave to additional risk, the City should have commenced condemnation proceedings and paid Enclave just compensation for the property.

# IV.
# CAUSES OF ACTION

## COUNT ONE – SUBSTANTIVE DUE PROCESS CLAIM (42 U.S.C. § 1983)

23. Enclave incorporates paragraphs 1-22 as though fully set forth here.

24. The City has violated Enclave's substantive due process rights by depriving Enclave of the use and enjoyment of the Apartment Complex without notice, process or compensation. By closing Randol Mill Road and the surrounding streets, massively increasing the volume and traffic in the area for special events at the Stadium, creating a hazard by preventing emergency personnel and vehicles from accessing the Apartment Complex and surrounding roads, not providing such personnel and vehicles with private access to and from the property, failing to enact reasonable ordinances and traffic control plans, and ignoring the increased security concerns at the Apartment Complex caused by the increased volume of pedestrians and motorists in the area and failing to conduct appropriate condemnation or other proceedings to address the foregoing problems, the City has denied Enclave of its property and its value, in contravention of the Fourteenth Amendment.

25. The City's improper actions are a further violation of Enclave's substantive due process rights in that the City has wholly failed, until very recently, to include or even inform Enclave of hearings and proceedings addressing traffic control plans for the area immediately surrounding the Stadium and Apartment Complex.

26. The City's actions are a further violation of Enclave's substantive due process rights in that the City has delegated all authority for road closures, traffic control plans, security and other issues affecting the area surrounding the Stadium, including the Apartment Complex, to the Cowboys, a private entity. The Cowboys are not impartial – they have an economic and vested interest in the Stadium and have been given the power and authority to implement

restrictions, plans and ordinances that restrict access to and from public streets and private land and require the City to exercise its power of eminent domain. These powers, which the Cowboys control, ultimately affect the value of all surrounding properties, including the Apartment Complex, and, when exercised arbitrarily or capriciously, allow the Cowboys and City to negatively impact the values of specific properties, therefore making them cheaper for future purchase. By delegating these significant powers to the Cowboys, the City has ensured that the only party or entity whose due process rights will not be infringed upon is the Cowboys.

27. The City's actions are an arbitrary, capricious and unreasonable deprivation of Enclave's property rights in that the City's current purported traffic "plans" for the area completely deny only Enclave and its tenants, guests, visitors, vendors, employees and emergency personnel all reasonable access to the Apartment Complex and surrounding streets for extended periods of time for a purported 100 days out of each year. No other multi-family residential properties remain in the area that are subject to such limitations.

28. The actions taken by the City are so arbitrary, capricious and unreasonable that they amount to a violation of Enclave's due process rights that is separate of Enclave's Fifth Amendment Takings claim.

29. There is no rational relationship between the City's actions described above and specifically its traffic plans, including closing Randol Mill Road and other surrounding roads, and any legitimate government purpose. The City merely seeks to provide a private drive for the Cowboys' VIP customers at the expense of Enclave and to serve the interests of the Cowboys without concern for the private land holders in the surrounding area. Moreover, given that the City has delegated virtually all control and authority for road closures and traffic plans to the

Cowboys, a private entity, there is essentially no "government" purpose at all – the traffic control plans and road closures will work solely for the purpose of maximizing profits for the Cowboys.

30. The City's decision to close Randol Mill Road and the surrounding streets and to hold special events at the Stadium beginning June 6, 2009, thereby massively increasing traffic in the area, is, for purposes of this action, a final decision and ripe for the Court's determination.

## COUNT TWO – REGULATORY AND PHYSICAL TAKINGS CLAIM (42 U.S.C. § 1983)

31. Enclave incorporates paragraphs 1-30 as though fully set forth here.

32. The City's actions in turning over control of municipal authority to the Cowboys and specifically granting their request to, among other things, isolate the Apartment Complex by failing to offer fair market value for its acquisition, mandating the closure of Randol Mill Road on game day and like events, preventing access both to and from the Apartment Complex, and creating overwhelming traffic in the area surrounding the Apartment Complex, are intentional governmental acts that resulted in the Apartment Complex being taken, damaged, or destroyed for a private, rather than public, use. Specifically, the City's actions are designed to accommodate the private interests of the Cowboys and their VIP guests and customers. Because the City's actions were not for a public use, this Fifth Amendment takings claim is ripe for determination by this Court.

33. The City's actions amount to an unwarranted physical appropriation or invasion of the Apartment Complex and deprive Enclave of all economically viable use of the property and totally destroy the property's value. Specifically, the denial of access to the Apartment Complex occasioned by the closing of Randol Mill Road and the increased traffic in the area severely diminishes the value of the Apartment Complex and its attractiveness to current and potential tenants and prevents Enclave from utilizing the surrounding, abutting roads.

34. As a result of the City's unauthorized taking for a private purpose, Enclave seeks recovery of all damages, actual and consequential, provable at trial.

## COUNT THREE - PRIVATE NUISANCE

35. Enclave incorporates paragraphs 1-34 as though fully set forth here.

36. Enclave has a private interest in the Apartment Complex that the City, with the assistance of the Cowboys, has interfered with and invaded by conduct that is negligent, intentional and unreasonable, and abnormal and out of place in its surroundings by (1) deliberately locating the primary service and Stadium construction access across from the Apartment Complex; (2) enacting ordinances and plans that will result in the complete closure of Randol Mill Road on event days at the Stadium; (3) significantly increasing the volume and frequency of traffic in the area surrounding the Apartment Complex without taking appropriate steps to alleviate the damage to the Enclave and the Apartment Complex; and, (4) as a result of the increased traffic, increasing the potential safety risks to residents and visitors of the Apartment Complex, as well as members of the surrounding community, by diverting traffic through residential areas and preventing emergency vehicles from accessing the Apartment Complex in a timely and expedient manner.

37. As set forth, the City's conduct has resulted in a condition that substantially interferes with Enclave's private use and enjoyment of the property, thus causing severe injury to Enclave and the value of the Apartment Complex. Further, the City's conduct was deliberate, as it has known of the existence and purpose of the Enclave since before it ever entered any agreement with the Cowboys. As a result, Enclave seeks recovery of all damages, actual and consequential, provable at trial, as well as exemplary damages in an amount sufficient to deter such wrongful conduct in the future.

**PLAINTIFF ENCLAVE ARLINGTON ASSOCIATES LIMITED PARTNERSHIP'S ORIGINAL COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF** – Page 12
DAL 77,374,058v5

## COUNT FOUR – PRELIMINARY INJUNCTION & PERMANENT INJUNCTION

38. Enclave incorporates paragraphs 1-37 as though fully set forth here.

39. The wrongful actions of the City have caused, and continue to cause, irreparable injury to Enclave for which no adequate remedy at law exists. As set forth above, the actions currently being taken by the City constitute an impermissible taking of Enclave's property for a private, rather than public, use, infringe Enclave's substantive due process rights, and constitute a nuisance. The City has taken steps to completely deprive Enclave and its tenants and guests reasonable access to the Apartment Complex, effectively imprisoning the Enclave's tenants, employees and guests, and denying Enclave and its tenants and guests access to valuable services, including medical and emergency services and unimpeded access to Randol Mill Road and the other abutting roads. Moreover, the City has created an impermissible safety hazard at the Apartment Complex by failing to design and implement a plan that allows for the safety and well-being of the Apartment Complex's residents and potential visitors by allowing unimpeded access to the property for emergency personnel.

40. Enclave will suffer irreparable injury for which there is no adequate remedy at law because the first special event at the Stadium is imminent and the safety hazards to Enclave and its tenants and guests is incalculable. Specifically, the City has no plans to prevent potential catastrophe at the Apartment Complex in the event of fire or medical emergency; no plans to protect the property and tenants from intruders and trespassers; no plans to address Enclave's likely increased property insurance due to these added dangers; and no plans to allow tenants, guests and visitors to the Apartment Complex free and unimpeded access to the abutting roads. Instead, the City has admitted that it has not considered any of these problems or the affect such

policies will have on the value of the Apartment Complex or Enclave's ability to retain its tenants and attract new residents.

41. There is a substantial likelihood that Enclave will succeed on the merits of its case. There is no dispute that the City, at the direction of the Cowboys, has completely isolated the Apartment Complex and severely damaged the value of the property due to dirty, debris, noise and other private nuisances and increased safety concerns caused by overwhelming motorist and pedestrian traffic.

42. The harm faced by Enclave outweighs the harm that would be sustained by the City if the preliminary injunction were granted. Specifically, the City's complete denial of access to the Apartment Complex could potentially lead to the loss of human life and other safety and health concerns due to the City's failure to provide unimpeded access to and from the Apartment Complex for emergency vehicles. Moreover, if an injunction is granted, the City will still have adequate time to prepare a plan that will address Enclave's concerns without affecting the Cowboys' special events.

43. Issuance of a preliminary injunction would not adversely affect the public interest because it protects Enclave's Fifth and Fourteenth Amendment property rights, while actually promoting, rather than harming, the health and safety of tenants, guests, visitors, motorists and pedestrians.

44. Accordingly, Enclave seeks a preliminary injunction and a permanent injunction, to maintain the *status quo*. In this case, with the exception of any and all nuisance conditions caused by the City, the *status quo* includes unfettered access between Randol Mill Road and the currently configured Apartment Complex for the Enclave and its guests, visitors, vendors, employees, emergency personnel and any other person or vehicle requiring immediate and

uninterrupted access to the Apartment Complex, Randol Mill Road, or any other road abutting the Apartment Complex.

45. To maintain the *status quo*, on days where the Stadium is hosting any special event, Enclave seeks a preliminary injunction and permanent injunction enjoining the City, and those acting in active concert with it, from implementing any traffic control plan, road restriction, alternative routing plan, temporary road closure, ordinance, regulation, code or any other plan that unreasonably impedes access to the Apartment Complex, Randol Mill Road, or any other road abutting the Apartment Complex for Enclave or any of its guests, visitors, vendors, employees, emergency personnel or any other person or vehicle requiring immediate and uninterrupted access to the foregoing.

46. Enclave further seeks a preliminary injunction and permanent injunction enjoining the City, and those acting in active concert with it, from implementing any traffic control plan, road restriction, alternative routing plan, temporary road closure, ordinance, regulation, code or any other plan that unreasonably impedes access to the Apartment Complex, Randol Mill Road, or any other road abutting the Apartment Complex, unless it also provides for the following:

    a. an exclusive, private means for the Enclave and any of its guests, visitors, vendors, employees, and emergency personnel to enter and exit the Apartment Complex on days where special events are held at the Stadium;

    b. a means for the Enclave and any of its guests, visitors, vendors, employees, and emergency personnel to bypass any road blocks or checkpoints the City intends to place on Randol Mill Road or any of the abutting streets;

    c. access to and from the Apartment that is safe and convenient and ***does not*** require the Enclave and any of its guests, visitors, vendors, employees, and emergency personnel to enter and exit the Apartment Complex from

**PLAINTIFF ENCLAVE ARLINGTON ASSOCIATES LIMITED PARTNERSHIP'S ORIGINAL COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF – Page 15**
DAL 77,374,058v5

the north side of the property via the currently existing one-way gate and through the surrounding private residential neighborhood;

d. dedicated routes providing unimpeded access to the Apartment Complex and all of the surrounding roads for emergency personnel and vehicles; and

e. additional security personnel surrounding the Apartment Complex to prevent fans and visitors to the Stadium from illegally entering the Apartment Complex on days where special events are held at the Stadium.

47. Enclave is ready, willing, and able to post a bond as necessary.

## V.
## CONDITIONS PRECEDENT

48. All conditions precedent to the bringing of this action have either occurred or been waived.

## VI.
## REQUEST FOR RELIEF

Enclave respectfully requests that the City be cited to appear and answer this suit, and that, upon final hearing, Enclave be awarded the following relief:

1. All of its actual damages, both general and special, to which it may prove entitlement;

2. Exemplary damages in an amount sufficient to deter such wrongful conduct in the future;

3. Pursuant to 42 U.S.C. §1988, Enclave's reasonable attorneys' fees and court costs incurred in prosecuting this action;

4. Pre-judgment and post judgment interest on the foregoing sums at the high respective legal rates; and

5. Such other relief, at law or in equity, to which Enclave may be entitled.

Respectfully submitted,

*[signature: Stephen C. Carlin]*

Stephen C. Carlin
State Bar No. 03807700
R. Craig Woods
State Bar No. 24042663
**GREENBERG TRAURIG, LLP**
2200 Ross Avenue
Suite 5200
Dallas, Texas 75201
Telephone:  214.665.3650
Facsimile:   214.665.3601
Email: carlins@gtlaw.com

**ATTORNEYS FOR PLAINTIFF ENCLAVE ARLINGTON ASSOCIATES LIMITED PARTNERSHIP**