CTJRMT
W/NDD
ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DROP BOX
APR 2 1 2009
8:52

CLERK, U.S. DISTRICT COURT
By _____
Deputy

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| ENCLAVE ARLINGTON ASSOCIATES LIMITED PARTNERSHIP, | § § § | |
| Plaintiff, | § § | Civil Action No.: 4-09CV-155-A |
| v. | § § | |
| CITY OF ARLINGTON, TEXAS, | § § | |
| Defendant. | § § | |

---

**PLAINTIFF ENCLAVE ARLINGTON ASSOCIATES LIMITED PARTNERSHIP'S
FIRST AMENDED COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff Enclave Arlington Associates Limited Partnership ("Enclave") files this Original

Complaint and Application for Injunctive Relief against Defendant City of Arlington, Texas (the

"City") and in support would show as follows:

**I.
PARTIES**

1.      Enclave is a Texas limited partnership with its principal office located in Houston,

Texas. Enclave's claims exceed the minimum jurisdictional limits of this Court.

2.      Defendant City of Arlington is an incorporated municipality located in Tarrant

County, Texas. This Court can exercise personal jurisdiction over the City because the City is a

citizen of the State of Texas and conducts business in the State of Texas, and otherwise has

sufficient minimum contacts with the State of Texas to warrant the exercise of personal

jurisdiction. Further, the City is subject to suit in this matter because sovereign immunity does

not shield the City from constitutional due process and takings claims or private nuisance claims

that rise to the level of a taking. Sovereign immunity is also inapplicable because the City is performing proprietary functions by building a private football venue for an NFL team that is not for the general public at large. The City has already entered an appearance in this matter and may be served by serving its counsel of record.

## II.
## JURISDICTION AND VENUE

3. This is an action brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, for violations of the Due Process clause of the Fourteenth Amendment and Takings Clause of the Fifth Amendment, preliminary injunction and permanent injunction, and for private nuisance under the laws of the State of Texas.

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court also has jurisdiction, pursuant to the principles of supplemental jurisdiction, over Enclave's state law claims.

5. This Court has personal jurisdiction over the City in that it is a municipality located in the State of Texas.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the City is an entity or individual subject to personal jurisdiction in this judicial district.

## III.
## FACTUAL BACKGROUND

A.    **The Apartment Complex and Randol Mill Road.**

7. Enclave owns The Enclave at Arlington apartment complex (the "Apartment Complex") located at 1249 Enclave Circle, Arlington, Texas 76011 directly across from the ongoing construction of the Dallas Cowboys' new football stadium (the "Stadium"). The

Apartment Complex provides high quality, reasonably-priced apartments for citizens of Arlington, Texas.

8.      Residents, guests, and employees of the Apartment Complex access and leave the property via an operational gate that feeds directly onto Randol Mill Road.  The Randol Mill Road gate is the only gate that allows both ingress to and egress from the Apartment Complex. Thus, Randol Mill Road is the primary ingress and egress for its residents and their visitors.  In addition to providing convenient access to the Apartment Complex, Randol Mill Road is also a main artery for pedestrians and motorists in the area, providing service and access to Six Flags Parks, the Ballpark at Arlington, and various other restaurants, hotels, shops and businesses in the surrounding community.  Notably, Randol Mill Road also provides convenient access to local medical services, most notably Arlington Memorial Hospital, and serves as a main thoroughfare for emergency services vehicles.

9.      Other than Randol Mill Road, the only other means of access to the Apartment Complex is an exit-only gate located on a small back-road on the property's north side that passes directly through a single-family residential neighborhood.  This back-road is narrow and difficult for vehicles to maneuver and not generally used or available to residents or guests of the Apartment Complex.  Moreover, the gate is not designed to handle two-way traffic.  The fact that this street passes through a residential neighborhood creates additional safety and traffic concerns.

**B.      The City Abdicates to the Cowboys Under the Stadium Deal.**

10.     In December 2004, the City entered a master development agreement (the "Master Agreement") with the Dallas Cowboys Football Club Ltd. (the "Cowboys") for the ownership, design, construction and leasing of the Stadium for the Dallas Cowboys professional

football team. Under the Master Agreement, the City will own the completed Stadium and surrounding property, leasing the facility to the Cowboys for a period of at least 30 years. In return, the Cowboys have responsibility for its operations and management and can require the City to take certain actions to further the project. It is the City's policy, custom or pattern of conduct to cede certain of its basic municipal authority and governmental functions to the Cowboys in connection with the Stadium project. In fact, section 1.2 of the Master Agreement specifically states that the Cowboys shall "plan, design, develop, construct, complete and make operational" the Stadium project. On information and belief, the Cowboys also have substantial control over most decisions affecting the surrounding area, including traffic control plans, eminent domain targets, and parking considerations. For example, section 3.4 of the Master Agreement provides that at the Cowboys request "the City may consider closing any streets or alleys that would constitute any portion of the site for The Cowboys Complex." The Cowboys also decide ticket prices and the schedule of events at the Stadium. Notably, unlike public venues designed to serve the general public at large, like civic centers and public coliseums, the Stadium is not open to the general public on days when it is not hosting a special event and is only accessible by purchasing a ticket.

11. Real property needed to be acquired at the proposed Stadium site and surrounding area to permit access to, as well as design and construction of, the Stadium and its supporting facilities. Under the Master Agreement, the Cowboys are entitled to and did direct the City as to which properties to purchase or condemn. In particular, section 2.2 of the Master Agreement provides that the Cowboys shall deliver plans for the Stadium that "reasonably identify the proposed locations of the parking tracts and of the Cowboys Complex, the parking facilities and the infrastructure on the Land." In return, the City shall "acquire the land by purchase, gift,

donation or the exercise of the power of eminent domain" and "make the Land available to the Club for the Cowboys Complex, as contemplated by the Project Documents." *See* Master Agreement §3.2. The funding for the acquisition of all such properties comes from a jointly-controlled project fund contributed to by the City and the Cowboys. As set forth above, under the Master Agreement, no such property can be purchased with project funds without the consent of both the City and the Cowboys. Thus, the Cowboys possess a veto over any property that the City would otherwise propose taking.

**C.       The City and Cowboys Create a Nuisance.**

12.       The primary site that the Cowboys directed the City to choose for the construction of the Stadium is directly across Randol Mill Road from the Apartment Complex. Under the current design, the City, at the direction of the Cowboys, placed the service and maintenance entrances for the Stadium, as well as primary access to the construction site, directly across from the Apartment Complex, causing substantial damage to the Apartment Complex and dirt and debris to be deposited on Randol Mill Road and in the Apartment Complex itself. Despite acquiring nearby properties, the Cowboys did not direct the City to condemn, and it did not condemn, or ever offer to purchase the Apartment Complex property.

13.       It appears the decision to forego condemnation proceedings on the Apartment Complex is a calculated attempt by the City, acting under instruction from the Cowboys, to drive down the fair market value of the Apartment Complex in hopes of obtaining it at a severely reduced rate in the future. Notably, the City has purchased various properties near the Apartment Complex, leaving it isolated and exposed to the dirt, damage and debris necessarily caused by placing the primary construction site access route directly across from the only workable entrance to the Apartment Complex, thus making it more difficult to access and

exposing the Apartment Complex's tenants and visitors to massive dirt, damage and debris caused by the Stadium construction. Such conduct directly damages the Apartment Complex, by making it substantially less attractive to current and potential tenants, directly lowering its rental and overall value as a residential property.

14. The City's actions of failing to condemn the Apartment Complex or engage Enclave regarding future plans for the area surrounding the Apartment Complex evidences an official policy, custom, or pattern by the City to deprive others of their constitutionally protected property rights. Moreover, the City's failure to act, or intentional indifference to Enclave and its residents' plight, further violates Enclave's constitutionally protected property rights because it should be obvious to the City that the likely consequences of its failure to act will deprive Enclave of its constitutionally protected property rights. Furthermore, the actions of the City – ceding its decision making authority to the Cowboys, intentionally land-locking the Apartment Complex, and subjecting the Enclave's residents to severe traffic congestion, debris, damage, crowd noise, increased crime and criminal mischief, and a massive number of road closures, as set forth below – amounts to an arbitrary and capricious abuse of governmental power that goes too far and deprives the Enclave of both its constitutionally protected property and due process rights. Finally, the City's conduct does not benefit the general public at large – failing to condemn property and protect its citizen's constitutional rights are discretionary acts intended for the sole benefit of the Cowboys.

D. **The City's Dangerous Parking and Traffic Plans.**

15. By their own calculations, the City and the Cowboys plan not only to have eight (8) home regular season football games at the Stadium, but numerous other collegiate and high school football games as well as concert acts and other events that will fill the 90,000-plus seat

venue on over 100 days per year. Already scheduled for the Stadium are the Cotton Bowl, Super Bowl XLV, Texas A&M vs. Arkansas football game, Big 12 Football Conference Championship; and NBA All-Star Game. By its own admission, the City expects as many as *30,000* additional vehicles, with each expected to carry three or more passengers, in the area for special events and Cowboys games. Originally, the City had indicated that the Stadium would begin hosting events in late August and early September of 2009. By February 17, 2009, however, the Cowboys and the City had announced that the inaugural event would be a sold out musical concert on June 6, 2009, approximately two months away.

16. Nonetheless, the City currently has no set plan for how to manage this massive influx of traffic and people into the area. More specifically, the City has entirely failed to make any plans or give any consideration for how tenants, visitors and even emergency medical personnel are to be able to enter and leave the Apartment Complex before, during and after events at the Stadium. Instead, the City's primary solution appears to be to close down Randol Mill Road and various other roads that surround the Apartment Complex to provide private thoroughfares and direct pedestrian access to the stadium for the Cowboys' highest-paying ticketholders and VIPs.[1]

17. More recently, the City revealed that its plans for the traffic grid extend far beyond Randol Mill Road and will further restrict access to the Apartment Complex on days when events are not being held at the Stadium. Specifically, the City, without notice to Enclave and its residents, closed-off most of the streets surrounding the Apartment Complex for the Rangers' home games at the Ballpark at Arlington baseball field. While these road closings have

---

[1] In a further and more egregious abdication of its municipal duties, under the Master Agreement, the City also agreed to take any actions necessary to enforce the Cowboys requested control of ingress and egress to the Stadium and surrounding area by closing access to selected streets as requested by the Cowboys. Again, in so doing, the City abdicated its primary municipal authority in favor of a private, for-profit entity, the Cowboys.

not prevented all access to the Apartment Complex, they have caused massive delays and forced the Enclave's residents to devise alternate, more circuitous routes to reach their homes, with many complaining that they "can't get home." More troubling, however, is the fact that the Rangers still have more than seventy-five home games remaining, which, when added to the already ambitious schedule for the Stadium, could result in more than 150 days out of the year where the streets surrounding the Apartment Complex are closed. Moreover, given the Rangers' ballpark's greater distance from the Apartment Complex and the Rangers' average attendance of less than 30,000 fans per event, it is obvious how much worse things will be when 90,000 fans attempt to enter and leave the Stadium, which is directly across the street from the Apartment Complex.

18. As part of the City's current but unfinished "plan," the City intends to close down the portion of Randol Mill Road fronting the Apartment Complex for the entirety of all game days and for the hours before, during and after other Stadium events. Should the City take such action, primary access to the Apartment Complex will be denied to its tenants, as well as to all prospective tenants, managers, operators, vendors and visitors. Moreover, the City's plan will subject the residents, guests and other visitors to the Apartment Complex to unnecessary risk and danger given that emergency services vehicles, including ambulances and fire trucks, and other public utility vehicles will be effectively denied access to the property, or will be so delayed that catastrophe cannot be avoided.

19. Despite planning that prevents virtually all access to the Apartment Complex during Stadium events, cripples the intended use of the facility and effectively either locks out residents and guests or imprisons them in their own apartments, the City has given no consideration to these problems. Instead, the only "plan" offered by the City is to "suggest" that

it "might" offer the Apartment Complex's residents identification badges allowing *only* residents, and no one else, access to the property on days when Randol Mill Road is closed. As for friends and family, someone that may have lost or misplaced their identification badge, or just a common pizza boy, they would be denied entry.

20. In a strategic attempt to appear more reasonable after the filing of this lawsuit, the City recently again "suggested" at a public meeting that it might provide local residents with a limited number of identification badges to pass out to motorists visiting residents on special event days. The City has neither confirmed this plan nor contacted Enclave to solicit input on its viability. On its face, however, the City's solution appears to contain a number of problems. First, the City evidently believes it reasonable to require local residents to mail these passes to expected visitors prior to a special event or meet with each of their potential visitors on the days leading up to the special event just to provide someone with a special identification badge. Friends or family members passing through the area will not be able to just "drop by" because they might not have the correct golden ticket. Second, if someone in the area wants to host a birthday party or gathering on the same day as a Stadium special event, they cannot – they would not have enough badges to provide to their guests. In the end, the City's plan is an impermissible intrusion into the lives of Enclave and its residents because it allows the City to dictate to others how their property should be used and who and how many people may visit someone in their home or apartment.

21. Compounding the problem is the fact that the City intends to use Randol Mill Road as a primary pedestrian artery for special events. The City plans to funnel up to 90,000 people down Randol Mill Road – Enclave's virtual front yard – thereby increasing the potential for crime and property damage at the Apartment Complex. If even 1% of the Stadium's patrons

are inebriated, this puts close to 1000 intoxicated fans, concertgoers and patrons less than twenty feet from the hundreds of children and families that call Enclave home.

22. The massive number of anticipated events at the Stadium, combined with the City's plan to close down Randol Mill Road, the stifling amount of traffic that the City has failed to properly account for, and shortage of proper parking, will constitute a material and substantial impairment of access to the Apartment Complex. Residents, visitors, employees and necessary service providers will be forced to sit in traffic for extended periods of time just to reach Randol Mill Road, where they likely will be completely barred from accessing the Apartment Complex. Conversely, anyone living at or visiting the Apartment Complex will be a prisoner in their own home.

23. Despite being tasked with protecting the health, safety and well-being of its residents, the city has deliberately chosen to ignore the Enclave and its 700-plus residents. As with the City's abdication to the Cowboys, the City's failure to provide any traffic and safety plans or exercise its governmental functions in any way, shape or form, or alternatively, introduction of a limited traffic plan that prohibits Enclave from making any use of the Apartment Complex on special event days, are actions undertaken for an improper motive – to deny Enclave and its residents of their constitutionally protected due process and property rights – by means that are arbitrary, capricious and pretextual. Notably, the Apartment Complex is the only remaining residential property surrounding the Stadium and, given the City's admitted concerns regarding parking and traffic, it appears that the City seeks to follow a policy of intentional misconduct or deliberate indifference in failing to enact reasonable traffic and safety plans in order to choke-off all access to the Apartment Complex and drive down its value. The

City's improper conduct is also not for a public purpose, but again, intended to benefit a private party, the Cowboys.

**E.      The City Hides Its "Plan" from Enclave.**

24.      Despite being obligated to do so under the Master Agreement and related agreements, the City, up until recently and only months before hosting its first event at the Stadium, has never invited Enclave to attend planning or other public meetings or notified it of its plans in connection with the design and construction of the Stadium or the condemnation of surrounding properties. Thus, it has been virtually impossible for Enclave to predict the impact of the facility on its operations as a multi-family dwelling.

25.      Enclave made numerous demands on the City to confirm what plans, if any, the City intended to implement to accommodate the residents of the Apartment Complex. The City largely ignored these requests. Enclave also requested documents and traffic control plans from the City under the Public Information Act. As of this lawsuit, the City still has not provided the documents Enclave requested in its demands to and meetings with the City. The pendency of the Stadium's opening and the first special events at the venue, combined with the City's lack of any valid plan for access to and from the Apartment Complex, necessitates the filing of this lawsuit.

26.      The City's conduct amounts to no less than a complete taking of the Apartment Complex and severely infringes upon Enclave's constitutional due process rights. The anticipated stifling traffic in the area occasioned by the construction of the Stadium and failure by the City to enact a workable traffic and access plan, combined with the proposed road closures, and continuous noise, debris, dirt and other nuisances caused by the Stadium, severely damage the Apartment Complex as a multi-family property by lowering the rental and resale values of the property, making it more difficult for the property to obtain credit refinancing, and

lowering revenues at the property through decreased numbers of tenants and rental rates. Moreover, the increased traffic and denial of access implicate substantial public safety concerns in that motorists will be forced to drive through residential neighborhoods where kids play and reside and emergency services vehicles will be severely hindered in their ability to provide life-saving relief to residents and guests of the Apartment Complex.

27. Finally, the City's plans dramatically increases the potential liability and risk for Enclave caused by unwanted intruders on the property, such as late night concert and other fans looking to extend their festivities. The massively increased flow of pedestrians and motorists before, during and especially after special events and games at the Stadium increases the likelihood of trespassers, and in turn, increases the likelihood that these trespassers could cause damage to the Apartment Complex, commit criminal and civil offenses on its grounds, or injure themselves while seeking improper access to the property. Rather than completely isolate the Apartment Complex and expose Enclave to additional risk, the City should have commenced condemnation proceedings and paid Enclave just compensation for the property.

## IV.
## CAUSES OF ACTION

### COUNT ONE – SUBSTANTIVE DUE PROCESS CLAIM (42 U.S.C. § 1983)

28. Enclave incorporates paragraphs 1-27 as though fully set forth here.

29. The City has violated Enclave's substantive due process rights by depriving Enclave of the use and enjoyment of the Apartment Complex without notice, process or compensation. By closing Randol Mill Road and the surrounding streets, massively increasing the volume and traffic in the area for special events at the Stadium, creating a hazard by preventing emergency personnel and vehicles from accessing the Apartment Complex and surrounding roads, not providing such personnel and vehicles with private access to and from the

property, failing to enact reasonable ordinances and traffic control plans, and ignoring the increased security concerns at the Apartment Complex caused by the increased volume of pedestrians and motorists in the area and failing to conduct appropriate condemnation or other proceedings to address the foregoing problems, the City has denied Enclave of its property and its value, in contravention of the Fourteenth Amendment.

30. The City's improper actions are a further violation of Enclave's substantive due process rights in that the City has wholly failed, until very recently, to include or even inform Enclave of hearings and proceedings addressing traffic control plans for the area immediately surrounding the Stadium and Apartment Complex.

31. The City's actions are a further violation of Enclave's substantive due process rights in that the City has delegated all authority for road closures, traffic control plans, security and other issues affecting the area surrounding the Stadium, including the Apartment Complex, to the Cowboys, a private entity. The Cowboys are not impartial – they have an economic and vested interest in the Stadium and have been given the power and authority to implement restrictions, plans and ordinances that restrict access to and from public streets and private land and require the City to exercise its power of eminent domain. These powers, which the Cowboys control, ultimately affect the value of all surrounding properties, including the Apartment Complex, and, when exercised arbitrarily or capriciously, allow the Cowboys and City to negatively impact the values of specific properties, therefore making them cheaper for future purchase. By delegating these significant powers to the Cowboys, the City has ensured that the only party or entity whose due process rights will not be infringed upon is the Cowboys.

32. The City's misconduct has deprived Enclave and its residents of their constitutionally protected property and due process rights. The City violated these

constitutionally protected rights pursuant to an official policy, custom or practice, which includes (1) directing or allowing the various city planning committees to enact traffic control plans that completely prevent all reasonable access to the Apartment Complex and abutting streets for the Enclave and its residents, guests and employees on more than 100 days out of the year; and (2) intentionally choosing to do nothing about, or acting deliberately indifferent to, the mounting traffic and safety concerns in the area surrounding the Apartment Complex caused by the Stadium. Despite numerous inquiries and requests from Enclave, the City refuses to provide any viable alternatives that would allow the Enclave's residents and guests to access the Apartment Complex 365 days out of the year or even to delineate what plans it currently has, if any, to allow for access to the Apartment Complex on special event days.

33. The City's actions are an arbitrary, capricious and unreasonable deprivation of Enclave's property rights in that the City's current purported traffic "plans" for the area completely deny only Enclave and its tenants, guests, visitors, vendors, employees and emergency personnel all reasonable access to the Apartment Complex and surrounding streets for extended periods of time for a purported 100 days out of each year. No other multi-family residential properties remain in the area that are subject to such limitations.

34. The actions taken by the City are so arbitrary, capricious and unreasonable that they amount to a violation of Enclave's due process rights that is separate of Enclave's Fifth Amendment Takings claim.

35. There is no rational relationship between the City's actions described above and specifically its traffic plans, including closing Randol Mill Road and other surrounding roads, and any legitimate government purpose. The City merely seeks to provide a private drive for the Cowboys' VIP customers at the expense of Enclave and to serve the interests of the Cowboys

without concern for the private land holders in the surrounding area. Moreover, given that the City has delegated virtually all control and authority for road closures and traffic plans to the Cowboys, a private entity, there is essentially no "government" purpose at all – the traffic control plans and road closures will work solely for the purpose of maximizing profits for the Cowboys.

36. The City's decision to close Randol Mill Road and the surrounding streets and to hold special events at the Stadium beginning June 6, 2009, thereby massively increasing traffic in the area, is, for purposes of this action, a final decision and ripe for the Court's determination.

## COUNT TWO – REGULATORY AND PHYSICAL TAKINGS CLAIM (42 U.S.C. § 1983)

37. Enclave incorporates paragraphs 1-36 as though fully set forth here.

38. The City's actions in turning over control of municipal authority to the Cowboys and specifically granting its request to, among other things, isolate the Apartment Complex by failing to offer fair market value for its acquisition, mandating the closure of Randol Mill Road on game days and like events, preventing access both to and from the Apartment Complex, and creating overwhelming traffic in the area surrounding the Apartment Complex, are intentional governmental acts that resulted in the Apartment Complex being taken, damaged, or destroyed for a private, rather than public, use. Specifically, the City's actions are designed to accommodate the private interests of the Cowboys and their VIP guests and customers. Because the City's actions were not for a public use, this Fifth Amendment takings claim is ripe for determination by this Court.

39. The City's actions amount to an unwarranted physical appropriation or invasion of the Apartment Complex and deprive Enclave of all economically viable use of the property and totally destroy the property's value. Specifically, the denial of access to the Apartment Complex occasioned by the closing of Randol Mill Road and the increased traffic in the area

severely diminishes the value of the Apartment Complex and its attractiveness to current and potential tenants and prevents Enclave from utilizing the surrounding, abutting roads.

40.     As a result of the City's unauthorized taking for a private purpose, Enclave seeks recovery of all damages, actual and consequential, provable at trial.

## COUNT THREE - PRIVATE NUISANCE

41.     Enclave incorporates paragraphs 1-40 as though fully set forth here.

42.     The City is subject to Enclave's private nuisance claim because governmental immunity does not shield the City from a private nuisance claim that rises to the level of an unconstitutional taking of property.  *See* TEX. CONST. art. I, §17.  Alternatively, the City is subject to suit because the Texas Tort Claims Act does not apply to a tort committed by a municipality while acting in a proprietary capacity.  *See* TEX. CIV. PRAC. R. CODE §101.0215(b).

43.     Enclave has a private interest in the Apartment Complex that the City, with the assistance of the Cowboys, has interfered with and invaded by conduct that is intentional and abnormal and out of place in its surroundings.  The City deliberately located a 90,000-capacity NFL football stadium and concert arena directly across the street from a 700-person residential Apartment Complex with full knowledge that the residents would be denied the use and enjoyment of their homes on at least 100 days each year.

44.     In addition, the City has interfered with and invaded Enclave's private interest in the Apartment Complex by purposefully enacting ordinances and plans that the City knows will result in the complete closure of Randol Mill Road – the only viable and safe access point for ingress and egress from the Apartment Complex – and cause a substantial increase in the safety risks to residents and visitors of the Apartment Complex by preventing emergency vehicles from accessing the Apartment Complex in a timely and expedient manner.

45.     As set forth, the City's intentional conduct has resulted in a condition that inherently and substantially interferes with Enclave's private use and enjoyment of the property, thus causing severe injury to Enclave and the value of the Apartment Complex. Further, the City's conduct was deliberate, as it has known of the existence and purpose of the Enclave since before it ever entered any agreement with the Cowboys. And, despite acquiring nearby properties, the City did not condemn, or ever offer to purchase the Apartment Complex, which on information and belief, appears to be a calculated attempt to drive down the fair market value of the Apartment Complex in hopes of obtaining it at a severely reduced rate in the future.

46.     The City's deliberate acts have resulted in a taking or damaging of the Apartment Complex and, as a result, Enclave seeks recovery of all damages, actual and consequential, provable at trial.

## COUNT FOUR – PRELIMINARY INJUNCTION & PERMANENT INJUNCTION

47.     Enclave incorporates paragraphs 1-46 as though fully set forth here.

48.     The wrongful actions of the City have caused, and continue to cause, irreparable injury to Enclave for which no adequate remedy at law exists. As set forth above, the actions currently being taken by the City constitute an impermissible taking of Enclave's property for a private, rather than public, use, infringe Enclave's substantive due process rights, and constitute a private nuisance. The City has taken steps to completely deprive Enclave and its tenants and guests reasonable access to the Apartment Complex, effectively imprisoning the Enclave's tenants, employees and guests, and denying Enclave and its tenants and guests access to valuable services, including medical and emergency services and unimpeded access to Randol Mill Road and the other abutting roads. Moreover, the City has created an impermissible safety hazard at the Apartment Complex by failing to design and implement a plan that allows for the safety and

well-being of the Apartment Complex's residents and potential visitors by allowing unimpeded access to the property for emergency personnel. Finally, the City has failed to articulate any other plans for the streets surrounding the Apartment Complex and remained deliberately indifferent to Enclave's objections.

49. Enclave will suffer irreparable injury for which there is no adequate remedy at law because the first special event at the Stadium is imminent and the safety hazards to Enclave and its tenants and guests is incalculable. Specifically, the City has no plans to prevent potential catastrophe at the Apartment Complex in the event of fire or medical emergency; no plans to protect the property and tenants from intruders and trespassers; no plans to address Enclave's likely increased property insurance due to these added dangers; and no plans to allow tenants, guests and visitors to the Apartment Complex free and unimpeded access to the abutting roads. Instead, the City has admitted that it has not considered any of these problems or the affect such policies will have on the value of the Apartment Complex or Enclave's ability to retain its tenants and attract new residents.

50. There is a substantial likelihood that Enclave will succeed on the merits of its case. There is no dispute that the City, at the direction of the Cowboys, has completely isolated the Apartment Complex and severely damaged the value of the property due to dirty, debris, noise and other private nuisances and increased safety concerns caused by overwhelming motorist and pedestrian traffic.

51. The harm faced by Enclave outweighs the harm that would be sustained by the City if the preliminary injunction were granted. Specifically, the City's complete denial of access to the Apartment Complex could potentially lead to the loss of human life and other safety and health concerns due to the City's failure to provide unimpeded access to and from the

Apartment Complex for emergency vehicles. Moreover, if an injunction is granted, the City will still have adequate time to prepare a plan that will address Enclave's concerns without affecting the Cowboys' special events.

52.     Issuance of a preliminary injunction would not adversely affect the public interest because it protects Enclave's Fifth and Fourteenth Amendment property rights, while actually promoting, rather than harming, the health and safety of tenants, guests, visitors, motorists and pedestrians.

53.     Accordingly, Enclave seeks a preliminary injunction and a permanent injunction, to maintain the *status quo*. In this case, with the exception of any and all nuisance conditions caused by the City, the *status quo* includes unfettered access between Randol Mill Road and the currently configured Apartment Complex for the Enclave and its guests, visitors, vendors, employees, emergency personnel and any other person or vehicle requiring immediate and uninterrupted access to the Apartment Complex, Randol Mill Road, or any other road abutting the Apartment Complex.

54.     To maintain the *status quo*, on days where the Stadium is hosting any special event, Enclave seeks a preliminary injunction and permanent injunction enjoining the City, and those acting in active concert with it, from implementing any traffic control plan, road restriction, alternative routing plan, temporary road closure, ordinance, regulation, code or any other plan that unreasonably impedes access to the Apartment Complex, Randol Mill Road, or any other road abutting the Apartment Complex for Enclave or any of its guests, visitors, vendors, employees, emergency personnel or any other person or vehicle requiring immediate and uninterrupted access to the foregoing.

55. Enclave further seeks a preliminary injunction and permanent injunction enjoining the City, and those acting in active concert with it, from implementing any traffic control plan, road restriction, alternative routing plan, temporary road closure, ordinance, regulation, code or any other plan that unreasonably impedes access to the Apartment Complex, Randol Mill Road, or any other road abutting the Apartment Complex, unless it also provides for the following:

a. an exclusive, private means for the Enclave and any of its guests, visitors, vendors, employees, and emergency personnel to enter and exit the Apartment Complex on days where special events are held at the Stadium;

b. a means for the Enclave and any of its guests, visitors, vendors, employees, and emergency personnel to bypass any road blocks or checkpoints the City intends to place on Randol Mill Road or any of the abutting streets;

c. access to and from the Apartment that is safe and convenient and *does not* require the Enclave and any of its guests, visitors, vendors, employees, and emergency personnel to enter and exit the Apartment Complex from the north side of the property via the currently existing one-way gate and through the surrounding private residential neighborhood;

d. dedicated routes providing unimpeded access to the Apartment Complex and all of the surrounding roads for emergency personnel and vehicles; and

e. additional security personnel surrounding the Apartment Complex to prevent fans and visitors to the Stadium from illegally entering the Apartment Complex on days where special events are held at the Stadium.

56. Enclave is ready, willing, and able to post a bond as necessary.

## V.
## CONDITIONS PRECEDENT

57.     All conditions precedent to the bringing of this action have either occurred or been waived.

## VI.
## REQUEST FOR RELIEF

Enclave respectfully requests that the City be cited to appear and answer this suit, and that, upon final hearing, Enclave be awarded the following relief:

1.     All of its actual damages, both general and special, to which it may prove entitlement;

2.     Pursuant to 42 U.S.C. §1988, Enclave's reasonable attorneys' fees and court costs incurred in prosecuting this action;

3.     Pre-judgment and post judgment interest on the foregoing sums at the high respective legal rates; and

4.     Such other relief, at law or in equity, to which Enclave may be entitled.

Respectfully submitted,

R. Craig Woods

Stephen C. Carlin
State Bar No. 03807700
R. Craig Woods
State Bar No. 24042663
**GREENBERG TRAURIG, LLP**
2200 Ross Avenue
Suite 5200
Dallas, Texas 75201
Telephone: 214.665.3650
Facsimile: 214.665.3601
Email: carlins@gtlaw.com

**ATTORNEYS FOR PLAINTIFF
ENCLAVE ARLINGTON ASSOCIATES
LIMITED PARTNERSHIP**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the following instrument was served via Certified Mail, Return Receipt Requested in accordance with the Federal Rules of Civil Procedure on April 21, 2009 on the following:

MELINDA H. BARLOW
Assistant City Attorney

DENISE WILKERSON
Assistant City Attorney

ROBERT FUGATE
Assistant City Attorney

CITY OF ARLINGTON
CITY ATTORNEY'S OFFICE
Mail Stop #63-0300
P. O. Box 90231
Arlington, Texas 76004-3231

R. Craig Woods