

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

NOV 1 0 2009

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| ENCLAVE ARLINGTON ASSOCIATES LIMITED PARTNERSHIP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:09-CV-155-A |
| | § | |
| CITY OF ARLINGTON, TEXAS, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION</u>
<u>and</u>
<u>ORDER</u>

Came on for consideration the motion of defendant, City of Arlington, Texas, for summary judgment as to all claims and causes of action brought against it by plaintiff, Enclave Arlington Associates Limited Partnership. Having considered the motion, plaintiff's response, defendant's reply,[1] the summary judgment record, and applicable legal authorities, the court concludes that the motion should be granted.

I.

<u>Plaintiff's Claims</u>

Plaintiff initiated this action through the filing of its original complaint on March 10, 2009. It filed its second amended

---

[1]In its reply, defendant objects to portions of plaintiff's evidence submitted in opposition to the summary judgment motion. Rather than rule specifically on the objections, the court will give the items in question whatever weight and consideration they deserve. Any motions pending before the court not specifically ruled on herein are denied as moot.

complaint ("Complaint") on July 8, 2009. Plaintiff brings claims for violation of substantive due process pursuant to 42 U.S.C. § 1983; unreasonable seizure in violation of the Fourth Amendment; a regulatory and physical takings claim; and a claim of private nuisance.[2]

II.

<u>The Motion for Summary Judgment</u>

Defendant contends that it is entitled to summary judgment because: (1) plaintiff cannot establish its Fourth Amendment claim because it cannot show meaningful interference with a possessory interest in its property or that defendant's actions were unreasonable; (2) plaintiff cannot establish its Fifth Amendment takings claim because defendant's plan to develop the stadium and its traffic management plan ("TMP") do not physically invade or destroy all economically viable use of the property, and were created for a public purpose; and (3) plaintiff's Fourteenth Amendment/substantive due process claim, and state law nuisance claim, are legally insufficient and fail as a matter of law.

---

[2]The second amended complaint also contains a request for preliminary and permanent injunction. The court in a hearing held June 4, 2009, denied plaintiff's initial request for a preliminary injunction.

III.

## Undisputed Facts

The following facts are undisputed in the summary judgment record:

In 2004, defendant and the Dallas Cowboys Football Club, L.L.C. ("Cowboys"), negotiated an agreement whereby defendant would become owner of a new sports stadium ("Stadium"), home of the Cowboys professional football team. On August 10, 2004, the Arlington City Council passed Resolution No. 04-358, stating in pertinent part:

> A RESOLUTION DESIGNATING AND PROVIDING FOR THE DALLAS COWBOYS COMPLEX DEVELOPMENT PROJECT AS A SPORTS AND COMMUNITY VENUE PROJECT . . . . PURSUANT TO CHAPTER 334, TEXAS LOCAL GOVERNMENT CODE

> . . . .

> The Council hereby designates, and, subject to approval at an election, authorizes a sports and community venue project within the City of the type described and defined in Section 334.001(4)(A) of and permitted by the Act. This sports and community venue project is described in summary form as follows:

> > A multi-purpose and multi-functional stadium, coliseum, community and entertainment venue that is planned for use for one or more professional or amateur sports events, including the professional football games of the "Dallas Cowboys Football Club," a member team of the National Football League, and related infrastructure, as defined in the Act. For the purposes of this resolution, this venue project is known as "The Dallas Cowboys

3

Complex Development Project."

App. to Def.'s Br. in Supp. of its Mot. for Summ. J. ("Def.'s
App.") at 94.   The Stadium construction project was put to a vote
as required by Chapter 334 of the Texas Local Government Code,
and approved by a majority of voters in November 2004.

Defendant and the Cowboys subsequently entered into a
"Master Agreement Regarding Dallas Cowboys Complex Development
Project" ("Complex Development Agreement"), which "sets forth the
preliminary plan of [defendant] and the [Cowboys] regarding the
financing and development of the Cowboys Complex. . . ." App. in
Supp. of Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s
App.") at 204, 211, and a "Cowboys Complex Lease Agreement"
("Lease Agreement"), id. at 254, intended to govern the terms of
the lease between defendant and the Cowboys as to the Stadium and
related development. Both the Complex Development Agreement and
the Lease Agreement recognize defendant's responsibility and
authority for management and closure of streets around the
Stadium:

Section 3.4.   Streets.

At the [Cowboys's] request and in accordance with the
Master Plan, the City may consider closing any streets
or alleys that would constitute any portion of the site
for The Cowboys Complex.

4

Complex Development Agreement, Pl.'s App. at 227. The Lease

Agreement further provides:

>    Section 5.8  Security/Traffic Management, Reimbursement
>                of Costs.
>
> . . . .
>
>    (b) Tenant may close, redirect the traffic flow of, or
>    otherwise restrict access to, streets to and around the
>    Cowboys Stadium on event days, to the extent permitted
>    by the City's Department of Public Works and under the
>    supervision and direction of such department.

Lease Agreement, Pl.'s App. at 288-89.[3]

Any event within the City of Arlington that significantly

impacts traffic or closes any lane of traffic requires a TMP. "If

the event is related to a baseball or football game, construction

of a building or any activity in street right-of-way that impedes

traffic, the responsible party is obligated to submit to the City

a proposed TMP," which is reviewed by Keith Melton, defendant's

Assistant Director of Public Works and Transportation ("Melton")

and his staff of engineers. Def.'s App. at 66. Defendant

considers the proposed TMP a "starting point" and makes changes

it believes are necessary to create a workable plan. Pl.'s App.

at 135.

---

[3]Plaintiff cites these provisions as evidence that defendant "abdicate[d] its authority to the Cowboys on numerous matters, including . . . traffic control." Pl.'s Br. in Supp. of Resp. in Opp'n to Def.'s Mot. for Summ. J. at 19. Plaintiff misreads or misstates this evidence, as a plain reading of these provisions makes clear that defendant retains authority and control of streets and traffic around and related to the Stadium. Plaintiff's assertions fail to create a fact issue on this point.

In developing a TMP for the Stadium, the Cowboys retained a traffic consultant, who prepared and submitted a proposed TMP, which was reviewed and modified by Melton, his staff, and traffic consultants hired by defendant.[4] The development of the TMP for the Stadium involved a collaboration between defendant's Public Works and Transportation department, police and fire departments, outside experts and consultants, and the Federal Bureau of Investigation, Homeland Security, the National Football League, and representatives of cities with major football stadiums.

Plaintiff is the owner of a 348-unit apartment complex, the Enclave ("Enclave"). Randol Mill Road, which runs east and west, is situated between the Enclave and the Stadium. Legends Way[5] runs north and south and intersects Randol Mill Road on the east side of the Enclave. Events at the Stadium are expected to draw approximately 14,000 vehicles to park in surrounding lots and generate approximately 35,000 to 42,000 pedestrians. It is expected that during events at the Stadium these pedestrians will

---

[4]Plaintiff attempts to characterize the process as defendant's "rubber-stamp" of the Cowboys's plan. A plain reading of the testimony regarding development of the TMP makes clear that defendant considered, and made substantive changes, to the TMP proposed by the Cowboys, even if some of the original recommendations were accepted . Pl.'s App. at 97-100. Plaintiff's narrow reading of the evidence does not create a fact issue.

[5]Legends Way was previously named Baird Farm Road, and it is occasionally so referenced in the parties' documents. For consistency and clarity, the court will refer to it by its current name, Legends Way.

be walking and converging at the corner of Legends Way and Randol

Mill Road, which is the corner of the Enclave. As part of the TMP

at issue, defendant anticipated controlling and limiting

vehicular access to Randol Mill Road and other streets around the

Stadium, and proposed allowing individuals access to the Enclave

through either a "hang tag" placed in the car or by telling a

police officer on duty that the Enclave is the person's

destination. On a portion of Legends Way, the TMP anticipated an

emergency access lane for use by emergency vehicles "and

approximately 130 event level patrons that park below the stadium

via the tunnel entrance to the stadium on Randol Mill Road."

Def.'s App. at 62.

Since the initiation of this action and the temporary

injunction hearing held by the court, several events, in addition

to Cowboys home football games, have been held at the Stadium. On

event days, some residents have been delayed when attempting to

enter or leave the Enclave, and some have complained to the

manager about "access, traffic, and noise." Pl.'s App. at 19.

During the time from July 1, 2009, through September 1, 2009, six

residents turned in their "Notice of Intent to Move Out," citing

traffic as a reason for their move. Of the six notices, two list

other reasons for the move in addition to traffic.

7

Defendant has assessed and modified the TMP after these events, and during some events, has allowed additional access to the Enclave via Legends Way. Prior to a George Strait concert at the Stadium in June 2009, at the request of the Enclave's manager, defendant created additional signs directing Enclave residents to the property's entrance. After the George Strait concert and prior to another concert, again at the Enclave manager's request, defendant modified the sign to direct "Enclave Residents and Guests" to the property's entrance. Def.'s App. at 253.

IV.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the

8

nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. <u>Anderson</u>, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. <u>Simmons v. Lyons</u>, 746 F.2d 265, 269 (5th Cir. 1984).

V.

Analysis

A.   Fourth Amendment Claim

The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, in pertinent part protects against violations of the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. A. IV; Soldal v. Cook County, Ill., 506 U.S. 56, 61 (1992). To prove an unconstitutional seizure, plaintiff must first show defendant caused "some meaningful interference with [its] possessory interests" in its property. Id. (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)). Only if the court concludes that a seizure has occurred will it then consider the seizure's reasonableness, a determination requiring "a careful balancing of governmental and private interests." Id. at 61-62, 71; Freeman v. City of Dallas, 242 F.3d 642, 649 (5th Cir. 2001).

The parties dispute the appropriate standard for the court to apply in determining the occurrence of a seizure in this case. Defendant maintains that it is entitled to summary judgment because plaintiff has not been completely "dispossessed" of its property. Plaintiff responds that "meaningful interference" is

10

the correct measure of whether it has suffered an unconstitutional seizure. While complete "dispossession" may not be required to effectuate a seizure under the Fourth Amendment, the court concludes that defendant is entitled to summary judgment on this claim because plaintiff has failed to establish any seizure that meaningfully interferes with its possessory interests.

Courts have found unconstitutional seizures where a party's land or physical property is the subject of actual damage or destruction. See, e.g., Soldal, 506 U.S. at 72 (physically tearing mobile home from its foundation and towing to another location a seizure); Freeman, 242 F.3d at 647 (demolition of plaintiffs' apartment buildings a seizure). See also Severance v. Patterson, 566 F.3d 490, 502 (5th Cir. 2009)(plaintiff's allegation that State appropriated an easement over her beachfront property sufficiently alleged a potential seizure to survive a motion to dismiss). As defendant contends, these cases do not support plaintiff's claim of seizure because plaintiff has not been physically deprived or "dispossessed" of its property.

Plaintiff, in turn, relies heavily on Presley v. City of Charlottesville, 464 F.3d 480 (4th Cir. 2006), a case involving the publishing by the defendant of a map showing a public trail

11

traversing plaintiff's yard, resulting in the public intrusion upon, and destruction of, a portion of her land. Id. at 482. Plaintiff relies on language from Presley that one need not be completely deprived of one's property to have suffered a Fourth Amendment seizure. While this accurately reflects the consideration of the Presley court, it is of no benefit to plaintiff, as the interference complained of therein involved the complainant's possessory interests--actual physical invasion of a portion of her land occasioned by the defendant's actions directed at her property. Here, plaintiff complains that the residual effects of defendant's actions as to public property have effected a seizure of its property. Presley does not support plaintiff's contention.[6]

Other cases relied upon by plaintiff are similarly inapposite, as they involved a governmental entity taking possession of an individual's luggage, United States v. Place, 462 U.S. 696 (1983), the taking of a television and substantial damage to a plaintiff's couch, Pepper v. Village of Oak Park, 430

---

[6]In Presley v. City of Charlottesville, 464 F.3d 480 (4th Cir. 2006), the plaintiff's claims were before the court of appeals after the district court granted defendants' motion to dismiss for failure to state a claim for relief. The court recognized that the plaintiff "ultimately may not be able to prevail" on her Fourth Amendment claim, but held she had sufficiently alleged such a violation to survive a motion to dismiss. Id. at 489. To the extent plaintiff relies on this case for the proposition that the complainant suffered a Fourth Amendment seizure, that reliance is misplaced.

F.3d 805 (7th Cir. 2005), and temporary removal of rifles from a closet, United States v. Gray, 484 F.2d 352 (6th Cir. 1973). Plaintiff cites Gonzalez v. City Plan Comm'n, 2006 WL 278985, at *3 (N.D. Tex. Feb. 3, 2006), for the proposition that "[c]ourts have found seizures when personal property has been destroyed or devalued by state action." This statement, while accurately quoted, is inapplicable here, as plaintiff does not allege that defendant has destroyed or devalued its personal property, and the reference in Gonzalez was followed by citations to cases where a dog, television, couch, and wall of a private building were damaged or destroyed--none of which are alleged by plaintiff. Absent is any authority whereby the building of a structure on nearby land, or control by a city of its public roads, or the attendant effects, constitute meaningful interference with a complainant's possessory interests. Stated differently, while the Complaint and plaintiff's response to the motion for summary judgment detail a long list of problems and inconveniences allegedly occasioned by the Stadium and the TMP, none implicates a possessory interest.

13

Although the cases cited by the parties, and those reviewed by the court, fail to define "possessory interest,"[7] the occasions where a seizure has been found involved government action directed to the party's property, not actions taken as to nearby land, the effects of which were felt by the complainant. See, e.g., Soldal, 506 U.S. 56; Severance, 566 F.3d at 502; Freeman, 242 F.3d at 647; Presley, 464 F.3d at 482; Gonzalez v. City Plan Comm'n, 2007 WL 1836872 (N.D. Tex. June 26, 2007) (rejecting plaintiff's Fourth Amendment claim where plaintiff complained of city's sale and platting of nearby property, in which plaintiff had no possessory interests).

Plaintiff contends that the actions of defendant have "meaningfully interfered" with its "use and enjoyment" of the Enclave, Pl.'s Br. in Supp. of Resp. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Br.") at 29, and gives as examples the "tens-of-thousands of pedestrians and vehicles" that pass near the Enclave on event days and cause a greater-than ten minute wait to exit or leave the property, id.; partying in the Stadium parking lot before and after the game, subjecting residents to "loud and boisterous conduct," id.; arrests at the Stadium of intoxicated

---

[7]Black's Law Dictionary defines possessory interest as the "[r]ight to exert control over specific land to exclusion of others." Black's Law Dictionary 1165 (6th Ed. 1990). Under that definition, none of plaintiff's allegations can be said to have caused such interference.

patrons;[8] and noise generally caused by Stadium events.[9] While
these occurrences are undoubtedly disruptive or inconvenient,
plaintiff has cited no authority whereby interference with "use
and enjoyment" constitutes "meaningful interference with
possessory interests" sufficient to establish a Fourth Amendment
seizure. Plaintiff further claims that its "occupancy rates have
dropped dramatically since the opening of the Stadium," Pl.'s Br.
at 30, but it cites no authority that such constitutes
"meaningful interference with possessory interests." Plaintiff
claims the three-foot fence surrounding the property is
insufficient to keep out the 90,000 fans who will proceed to and
from the Stadium directly in front of the Enclave, but directs
the court to no summary judgment evidence showing that any such
trespass has occurred. Finally, plaintiff contends that closing
Randol Mill Road and Legends Way renders its "frontage space" and
"immediate grounds" as "part of the Cowboys' VIP boulevard for

_____

[8]Apparently in support of these contentions, plaintiff's appendix includes several documents
which appear to be print-outs of newspaper articles. Newspaper articles are hearsay and do not constitute
competent summary judgment evidence. James v. Texas Collin County, 535 F.3d 365, 374 (5th Cir.
2008).

[9]Plaintiff contends that police officers "often refuse to allow access" to residents and that
residents are sometimes "prevented from accessing or leaving the property." Pl.'s Br. at 30, 31. The
summary judgment evidence cited in support of these statements, however, shows that on only one
occasion, the Enclave's manager was told she could not return to the property, so she "drove over a cone"
to enter the property. Pl.'s App. at 19. Otherwise, the summary judgment record shows that while
residents may have experienced delays in entering or exiting the property, no one was denied access.

high-paying Stadium customers." Compl. at 16. The TMP, however,
regulates only public streets over which defendant has complete
control. Tex. Transp. Code §§ 311.001, 311.007 (Vernon
1999)(giving home-rule municipality such as defendant[10]
"exclusive control" over the public streets). Again, plaintiff
cites no authority, and the court's research has found none,
whereby the effects of a city's lawful acts in regards to public
streets constitutes a Fourth Amendment seizure.

Accordingly, as plaintiff has failed to establish any
meaningful interference by defendant with its possessory
interests in the Enclave, summary judgment is proper on
plaintiff's Fourth Amendment claim.[11]

B.    Fifth Amendment "Takings" Claim

"The Takings Clause of the Fifth Amendment, made applicable
to the States through the Fourteenth. . ., provides that private
property shall not be taken for public use, without just
compensation." Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536
(2005)(internal quotation marks and citations omitted). As is
clear from its text, "the Takings Clause does not prohibit the

---

[10]Defendant is a home-rule city. See Pl.'s App. at 258.

[11]As the court concludes that plaintiff has failed to establish a Fourth Amendment seizure, it
need not consider the reasonableness of defendant's actions.

taking of private property, but instead places a condition on the exercise of that power." Id. (citations and quotation marks omitted). The intent is "not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." Id. at 537 (emphasis in original).

From the face of the Complaint it is apparent that this is not a case where a governmental exercise of eminent domain has resulted in the physical taking of an individual's property, nor has a governmental regulation adversely restricted a complainant's ability to use or control its property. Instead, plaintiff's claims are grounded on defendant's alleged "turning over control of municipal authority to the Cowboys" by, among other things, closing Randol Mill Road on event days, restricting access to and from its property, and creating "overwhelming" traffic in the area around the Enclave, all of which plaintiff contends were done "to accommodate the private interests of the Cowboys and their VIP guests and customers." Compl. at 17. Although the Complaint alleges that defendant's actions "amount to an unwarranted physical appropriation or invasion" of its property, have deprived it "of all economically viable use of the property," and have "destroy[ed] the property's value," Compl. at

17

17, there is no evidence of any physical invasion by defendant,
and the allegations, cited above, that plaintiff claims "amount"
to such invasion fail to state otherwise. See, e.g., Loretto v.
Teleprompter Manhattan CATV Corp., 458 U.S. 419, 427
(1982)("permanent physical occupation of real property" occurred
when plaintiff required to accept permanent installation of a
cable on her building). Further, the summary judgment evidence
fails to support plaintiff's contention that defendant's acts
have "destroyed" the Enclave's value or deprived it of "all
economically viable use." Thus, the essence of plaintiff's
complaint is that the effects of the Stadium and the TMP
constitute an unconstitutional taking.

The parties disagree on the proper standard for the court to
apply in determining if a "taking" has occurred. Defendant
contends that plaintiff must prove that (1) the TMP physically
invades, or denies plaintiff all economically viable use of, its
property, and (2) the Stadium project and TMP accomplished a
private purpose. In contrast, plaintiff maintains that the proper
inquiry is whether a regulation "goes too far," requiring the
court to balance "(1) the economic impact of the regulation on
the claimant; (2) the extent to which the regulation has
interfered with distinct investment-backed expectations; and (3)

the character of the governmental action." Pl.'s Br. at 39. The

court concludes that while it is to "engage in 'ad hoc, factual

inquiries' into numerous factors" to determine if a taking has

occurred, it is not bound to consider only, or even all, of the

three factors advocated by plaintiff. Samaad v. City of Dallas,

940 F.2d 925, 938 (5th Cir. 1991)(internal citations omitted).

Rather, "the circumstances of each case determine the factors a

court should consider in a takings case." Id. (citing

Ruckelshaus v. Monsanto Co., 467 U.S. 986 (1984), and Hodel v.

Irving, 481 U.S. 704 (1987)). In the instant action, the court

finds significant the character of the government action,

specifically the lack of any physical invasion of plaintiff's

property and the public nature of the Stadium and TMP, in

concluding that summary judgment is appropriate on plaintiff's

takings claim.

"[A] 'taking' may more readily be found when the

interference with property can be characterized as a physical

invasion by government," a circumstance not present here. Samaad,

940 F.2d at 938 (citing Loretto, 458 U.S. at 426("permanent

physical occupation of real property" occurred when plaintiff

required to accept permanent installation of a cable on her

building); Lingle, 544 U.S. at 539 ("character of the

19

governmental action" considers "whether it amounts to a physical invasion or instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good")(internal citations and quotation marks omitted). As discussed above, no physical invasion has occurred in this case; plaintiff's complaint arises from the consequences of defendant's actions as to nearby property, thus significantly weakening the possibility of an unconstitutional taking. See, e.g., Smith v. City of Brenham, Tex., 865 F.2d 662, 663 (5th Cir. 1989)("takings" claim weak where governmental action involved only nearby property).

Also significant is the court's conclusion, despite plaintiff's contentions that all of defendant's actions are for "private, rather than public, use," Compl. at 17,[12] that the Stadium and TMP both effectuate a "public purpose." The court's

---

[12] In relation to this and other claims, plaintiff repeatedly contends that the only purpose of the TMP is to create a walkway for the Cowboys' VIPs, and that defendant abdicated municipal control to the Cowboys and "rubber-stamped" the Cowboys's unilaterally-devised traffic plans. The evidence cited by plaintiff fails to support these conclusory assertions. For example, the Complex Development Agreement, cited by plaintiff to support the above contentions, vests final authority to close streets with defendant. Similarly, plaintiff cites to testimony elicited by defendant's representatives at the injunction hearing to support its contention that defendant "rubber-stamped" the Cowboys's traffic plan. The cited testimony instead reveals that defendant considered, but made substantive changes to, the plan submitted by the Cowboys. As to its contention that the TMP is solely for the creation of a private walkway for VIP guests, not only does plaintiff offer no evidence to support this contention, but it is contradicted by plaintiff's contentions concerning the tens of thousands of fans walking in front of the Enclave--hardly indicative of a private walkway. These conclusory assertions are insufficient to defeat summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

conclusion relies in part on provisions in Chapter 334 of the Texas Local Government Code, defining an "approved venue project" as a "sports and community venue project that has been approved under this chapter by the voters of a municipality" and, in applicable part, defines "venue" as "an arena, coliseum, stadium, or other type of area or facility. . . ." Tex. Loc. Gov't Code Ann. §§ 334.001(1), (4)(A)(Vernon 2005). Section 334.044(a) further declares that "for all constitutional and statutory purposes [] an approved venue project is owned, used, and held for public purposes by the municipality or county." It is undisputed that the Stadium was created under these statutory provisions, which supports the conclusion that it serves a public purpose. See Kelo v. New London, 545 U.S. 469, 480 (2005)(recognizing a "longstanding policy of deference to legislative judgments" regarding determinations of a public use). Although not binding, the court also finds persuasive a recent decision of the Fort Worth Court of Appeals, holding that the Lease Agreement between defendant and the Cowboys concerning the Stadium and related condemnation proceedings were for a public use. Cascott, L.L.C. v. City of Arlington, 278 S.W.3d 523, 530 (Tex. App.--Fort Worth 2009, pet. denied).

21

Further, there can be no serious debate that regulation of traffic, as contemplated by the TMP, is a quintessential function of a city's police power, especially given the statutory grant to a city of authority over its streets, thus serving a legitimate public purpose. Tex. Transp. Code §§ 311.001, 311.007 (Vernon 1999)(giving home-rule municipality "exclusive control" over the public streets). See also Vulcan Materials Co. v. City of Tehuacana, 369 F.3d 882, 887 (5th Cir. 2004)("No one doubts that a municipality may enact reasonable regulations to promote the health, safety, and general welfare of its people.")(internal citations omitted). Development of the TMP to regulate pedestrian and vehicular traffic is exactly the sort of exercise of a city's police power that qualifies as a legitimate public purpose. See, e.g., Dolan v. City of Tigard, 512 U.S. 374, 387 (1994)(reduction of traffic congestion "qualif[ies] as the type of legitimate public purpose[] we have upheld."); Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507-08 (1981)(traffic safety is a substantial governmental goal). See also Tex. Transp. Code §§ 311.001, 311.007 (Vernon 1999).

Given the public purpose of the Stadium and the TMP, as well as the lack of any physical invasion by defendant on plaintiff's

22

property, the court concludes that defendant is entitled to

summary judgment on plaintiff's Fifth Amendment takings claim.

C.    Due Process Claim

To state a substantive due process claim under 42 U.S.C. §

1983, plaintiff must first demonstrate that it has a

"constitutionally protected property right to which the

Fourteenth Amendment's due process protection applies." Simi Inv.

Co., Inc. v. Harris County, Tex., 236 F.3d 240, 249-50 (5th Cir.

2000). If so, the court must then determine whether defendant's

actions are rationally related to a legitimate government

interest. Id. at 250-51 (citing FM Props. Operating Co. v. City

of Austin, 93 F.3d 167, 174 (5th Cir. 1996)). "The question is

only whether a rational relationship exists between the [policy]

and a conceivable legitimate objective. If the question is at

least debatable, there is no substantive due process violation."

Id. (citing FM Props. Operating Co., 93 F.3d at 175 (alteration

in original)). "Only if such government action is 'clearly

arbitrary and unreasonable, having no substantial relation to the

public health, safety, morals, or general welfare,' may it be

declared unconstitutional." FM Props. Operating Co., 93 F.3d at

174 (citing Village of Euclid v. Ambler Realty Co., 272 U.S. 365,

395 (1926)).

Here, plaintiff's due process claims arise from the TMP and its effects: closing or limiting access to roads around the Stadium and Enclave, and increased traffic. Without determining the extent or existence of plaintiff's constitutional right at issue, the court agrees with defendant that regulation of traffic is rationally related to defendant's legitimate interest in "maintaining safe roadways for pedestrians and providing emergency services and police protection" to its citizens. Def.'s Br. at 26. There can be no doubt that promoting and regulating traffic safety are rationally related to a legitimate government interest sufficient to foreclose a substantive due process claim. See, e.g., Dolan, 512 U.S. at 387 (reduction of traffic congestion a legitimate public purpose of government regulation); Stone v. City of Maitland, 446 F.2d 83 (5th Cir. 1971)(no due process violation, as reducing traffic is a constitutionally permissible objective of zoning ordinance); Heritage Dev. of Minn., Inc. v. Carlson, 269 F. Supp.2d 1155, 1161 (D. Minn. 2003)(failure to approve zoning change in part due to traffic concerns did not violate substantive due process). Accordingly, summary judgment is proper as to plaintiff's due process claim.

D.   Private Nuisance Claim

Plaintiff also brings a state law claim of nuisance.

24

Defendant contends that before the court may impose liability

upon a governmental entity for private nuisance, the entity must

waive its governmental immunity. City of Dallas v. Jennings, 142

S.W.3d 310, 315 (Tex. 2004). "[T]he claimed 'nuisance' exception

to the rule of municipal immunity to tort liability exists only

when the immunity is expressly waived," such as by the Texas Tort

Claims Act, or by article I, section 17 of the Texas

Constitution, which states that "no person's property shall be

taken, damaged or destroyed for a public purpose without adequate

compensation." Id. at 315-16 (quoting Bragg v. City of Dallas,

605 S.W.2d 669, 671 (Tex.Civ.App.--Dallas 1980, no writ)(internal

quotation marks omitted). Thus, "a city may be held liable for a

nuisance that rises to the level of a constitutional taking." Id.

at 316.

    In Jennings, the Texas Supreme Court held the city immune

from plaintiff's claim of nuisance based on its finding that no

constitutional taking had occurred. Id. Inasmuch as the court

concludes that defendant's actions in this case effected no

constitutional taking, plaintiff likewise cannot recover on its

claim of nuisance.[13]

---

[13]Although the Complaint asserts defendant's liability under the Texas Tort Claims Act, the issue
is not raised in defendant's motion or in plaintiff's response. Accordingly, it is waived. Savers Fed. Sav.
(continued...)

25

VI.

Order

Therefore,

For the reasons stated herein,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted, and that all claims and causes of action asserted by plaintiff, Enclave Arlington Associates Limited Partnership, against defendant, City of Arlington, Texas, be, and are hereby, dismissed with prejudice.

SIGNED November 10, 2009.

_____
JOHN McBRYDE
United States District Judge

---

(...continued)

& Loan Ass'n v. Reetz, 888 F.2d 1497, 1501 (5th Cir. 1989).